UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET MORRIS,

    Plaintiff,

v.                                                                             Case No: 8:22-cv-2048-CEH-AAS

LINCARE, INC.,

    Defendant.
_____/

# ORDER

This matter comes before the Court on the Plaintiff's Motion for Class Certification (Doc. 127), Defendant's response in opposition (Doc. 149),[1] Plaintiff's reply (Doc. 157), and Plaintiff's Notice of Supplemental Authority (Doc. 164). In the motion, Plaintiff requests an Order certifying classes under the Telephone Consumer Protection Act and under the Florida Telephone Solicitations Act. Plaintiff argues that this case is appropriate for class certification because it meets all the requirements under Federal Rule of Civil Procedure 23. The Court held argument on the motion on October 30, 2024. The Court, having considered argument of counsel, the parties' submissions, and being fully advised in the premises, will grant Plaintiff's Motion for Class Certification.

---

[1] Plaintiff moved to exclude from the Court's consideration on the motion for class certification, and any other motion, the exhibits relied upon by Lincare in its response given the Defendant's failure to previously produce the documents in discovery. Doc. 152. On October 28, 2024, the Magistrate Judge denied Plaintiff's motion to exclude and strike exhibits. Doc. 168.

I. **BACKGROUND**

Plaintiff, Janet Morris ("Plaintiff" or "Morris"), on behalf of herself and all others similarly situated, brings this action against Defendant Lincare, Inc. ("Defendant" or "Lincare"), for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*, and the Florida Telephone Solicitations Act ("FTSA"), Fla. Stat. § 501.059.

The Second Amended Complaint asserts the following factual allegations. To promote its goods and services, Lincare engages in unsolicited robocalling in violation of the TCPA and FTSA. Doc. 51 ¶ 3. Beginning on September 21, 2020, Lincare sent unsolicited and unconsented to prerecorded voice calls to Plaintiff's cellular telephone. *Id.* ¶ 14. It was obvious from the messages left that the calls were made using a prerecorded voice and were not made by a live person. *Id.* ¶ 15. Despite the messages representing that the caller was Plaintiff's medical supply company, Plaintiff alleges that Lincare is not her medical supply company and the calls were not about care, services, need or supplies related to Plaintiff's health. *Id.* ¶ 16. The purpose of the calls was to solicit the sale of consumer goods and to advertise the commercial availability of Lincare's goods to Plaintiff. *Id.* ¶ 17.

Plaintiff was in Florida when she received the robo sales calls to her cellular telephone number. *Id.* ¶¶ 18, 19. Plaintiff never provided Lincare with express written consent or authorization to transmit prerecorded sales or marketing calls to her cellular telephone number. *Id.* ¶¶ 21, 22. Plaintiff never provided Lincare with express consent or any consent or permission to contact her on her cellular telephone with prerecorded

2

messages. *Id.* ¶¶ 23, 24. Plaintiff never provided her telephone number to Lincare. *Id.* ¶ 25. Lincare's telephonic sales calls caused harm to Plaintiff and the putative class, including liquidated damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory rights. *Id.* ¶ 28.

In Count I, Plaintiff alleges that Lincare used prerecorded messages to make non-emergency calls to Plaintiff's cellular telephone in violation of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200. *Id.* ¶¶ 40–43. In Count II, Plaintiff sues Lincare for violation of the FTSA, Florida's statutory counterpart to the TCPA. *Id.* ¶¶ 48–55. She alleges that Lincare made or knowingly allowed sales calls to be made to Plaintiff's cellular telephone without her prior express written consent in violation of the FTSA. *Id.* ¶¶ 52–53. She claims she was harmed and seeks statutory damages for each violation of the statute. *Id.* ¶ 54.

Plaintiff believes that Lincare has placed pre-recorded telephonic sales calls to telephone numbers belonging to at least 50 persons.[2] *Id.* ¶¶ 27, 31. Plaintiff proposes the following classes:

> TCPA Class: All persons within the United States whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who, within the four years prior to the filing of this lawsuit, received one or more prerecorded voice calls, on their cellular telephone, requesting a return call to Defendant.
>
> FTSA Class: All persons with a Florida area code telephone number,

---

[2] Plaintiff's expert analyzed Lincare's call records produced in discovery and determined that 53,534 prerecorded calls were made to at least 1,884 unique telephone numbers. Doc. 127 at 9.

3

> whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who, since July 1, 2021 through the filing of this lawsuit, received one or more prerecorded calls, on their cellular telephone, requesting a return call to Defendant.

Doc. 51 at p. 13–14.

A. Plaintiff's CPAP Device and Written Consent

Sometime around April 24, 2015, Plaintiff was diagnosed with obstructive sleep apnea. Doc. 127-4 at 17:22–18:13; 43:6–44:1. Plaintiff was prescribed a CPAP device to treat her condition. *Id.* at 18:19-23. Her doctor gave her a list of CPAP device suppliers, including American HomePatient ("AHP"), where she voluntarily chose to go to get fitted and supplied with a CPAP device. *Id.* at 22:25-23:7. Plaintiff's CPAP device included tubing, a nasal device, nasal cushions, filters, headgear, and a mask. *Id.* at 23:8-20. During her visit to AHP on May 12, 2015, Morris signed a consent form expressly agreeing to receive calls "by or on behalf of American HomePatient" at her telephone number ending in -7067 "regarding treatment options, health-related information, disease management programs, wellness programs, products, services or other community based initiatives or activities relating to my care." *Id.* at 54:2-56:15; *see* Doc. 149-1 at 31–33.

Plaintiff ordered CPAP supplies from AHP on July 17, 2015; October 20, 2015; February 2, 2016; and October 17, 2016. Doc. 149-1 ¶¶ 39–42. On February 15, 2018, after the acquisition of AHP by Lincare, Lincare created a patient profile for Morris. *Id.* ¶ 44. Lincare sent Plaintiff a letter on March 13, 2018, about the consolidation. *Id.* In 2018, Plaintiff was put into the Lincare system, and her call was set based on when

her CPAP resupply would likely be required. *Id.* Lincare placed a call to the number Plaintiff had provided, and when Plaintiff did not answer the phone, Lincare left a message indicating it was a medical supply company. *Id.* ¶ 45. According to Lincare, more detail was not included in the message left in order to satisfy the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA").

    B. Class Certification

Plaintiff now moves, pursuant to Fed. R. Civ. P. 23, for class certification under the TCPA and the FTSA. Plaintiff alleges that Lincare operates a "CPAP Call Center" that is staffed by inside sales representatives who compete to see how many outbound calls they can place daily with the goal of securing a certain number of orders of CPAP supplies regardless of an individual's need for those supplies. Rather than wait for consumers to order supplies, Lincare places outbound calls to consumers to remind them of their "eligibility." According to Plaintiff, inside sales representatives are educated to continue attempts to sell the consumer goods even if the consumer resists. Lincare uses an auto-dialer to place the calls, but if a live person answers the call, the call will be connected to the next available inside sales representative.

In support of her motion, Plaintiff alleges she has standing because Eleventh Circuit precedent supports a finding of an injury, and therefore Article III standing, even if one unwanted prerecorded call is made in violation of the TCPA. She further argues that each class is adequately defined, and she has satisfied the Rule 23(a) and Rule 23(b)(3) requirements.

## II.   LEGAL STANDARD

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may be maintained only when it satisfies all the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The initial burden of proof to establish the propriety of class certification rests with the Plaintiff. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As a threshold issue, Plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). The party seeking to maintain the class action must affirmatively demonstrate his compliance with Rule 23. *Id.* The party must be prepared to prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis in original). As explained in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." 350 F.3d 1181, 1187 (11th Cir. 2003).

Under Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

>(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### III. DISCUSSION

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Lincare argues Plaintiff's motion fails because (1) she cannot meet the initial threshold of establishing she has standing; (2) Plaintiff fails to carry her burden of showing predominance, commonality, and ascertainability; and (3) Plaintiff's claim is not typical of the putative class members she seeks to represent. The Court addresses the standing issue first.

#### a. Standing

"[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1046 (11th Cir. 2020), quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). The plaintiff bears the burden of proving the three elements of standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

7

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Lincare argues that Plaintiff and the putative class cannot establish Article III standing because the TCPA's requirement of prior written consent does not apply to "health care messages" like the calls Lincare made to Plaintiff and the class members. Because the calls fall under the Health Care Rule, Lincare argues there was no injury. Plaintiff argues that she and the class members were injured the minute they received the unconsented to calls despite what happened after the call.

As it relates to Lincare's argument that consent was given for the call, Plaintiff contends that the issue of consent is immaterial to standing and the Rule 23 analysis and is better addressed at summary judgment. Plaintiff argues that whether consent was given does not mean plaintiffs lack an injury and does not result in the Court losing jurisdiction. Prior express consent is "an affirmative defense to a claim under the TCPA." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304–05 (11th Cir. 2015). Thus, as Plaintiff argues in her motion, courts in this Circuit and other jurisdictions have generally addressed consent as a merits issue rather than an issue of constitutional standing. *See Wesister v. Vantage Point*, No. 8:21-cv-1250-SDM-AEP, 2022 WL 3139373, at *4 (M.D. Fla. Aug. 3, 2022) (finding that in an action under the TCPA, consent functions as an affirmative defense to liability and not as an issue of constitutional standing); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) (holding that determining whether consent was provided required an analysis of the merits of plaintiff's TCPA claim and had no bearing on the question of Article III

standing); *Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-CV-952-JDW-AAS, 2017 WL 34823, at *2 (M.D. Fla. Jan. 3, 2017) ("whether Plaintiff consented to the calls goes to the merits of her claim, not whether jurisdiction is proper"); *Reese v. Marketron Broad. Sols., Inc.*, No. CV 18-1982, 2018 WL 2117241, at *2 (E.D. La. May 8, 2018) (finding that most courts in TCPA cases address consent as a merits issue rather than as an issue of constitutional standing) (collecting cases).

At the hearing, Defendant argued that because this case involves the health care exemption, the issue of consent is tied to standing. The Court has not found an Eleventh Circuit case specifically addressing the standing issue in the context of the health care rule. The Court will follow the numerous courts in this Circuit and others that have found that whether or not consent was provided is appropriately addressed as an issue on the merits on summary judgment rather than as an issue of constitutional standing.

Plaintiff argues that the Eleventh Circuit's opinions in *Cordoba* and *Drazen* support the finding of a TCPA/FTSA injury and therefore standing. The Court agrees. *Cordova v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), held that the receipt of an unwanted prerecorded voice call "made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." *Id.* at 1270. In *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023), the Eleventh Circuit recently held that even a single text message sent in violation of the TCPA was sufficient to meet the requirements of Article III standing. Plaintiff here has established she has standing to bring her claims under the TCPA and FTSA, and

9

therefore the Court has jurisdiction over this matter. The Court turns next to ascertainability.

### b. Adequately Defined and Clearly Ascertainable

It is well-established that "without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). The Court in *Cherry* further explained that:

> if a class is defined in terms so vague as to be indeterminate, then a district court lacks a way to assess whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *cf. DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). A clear definition too is necessary for a district court to determine whether "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), and whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class," *id.* R. 23(a)(3). So a district court must decide that a class is ascertainable before it may turn to the requirements of Rule 23(a). *Little*, 691 F.3d at 1304.

986 F.3d at 1303. In this case, Plaintiff defines the proposed TCPA class as "All persons within the United States whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who within the four years prior to the filing of this lawsuit, received one or more prerecorded voice calls, on their cellular telephone, requesting a return call to Defendant." Doc. 127 at 1. Similarly, the FTSA class is defined as "All persons with a Florida area code telephone number, whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who, since July 1, 2021 through the filing of this lawsuit, received one or

more prerecorded calls on their cellular telephone, requesting a return call to Defendant." *Id.* at 1–2.

The Eleventh Circuit has stated that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015). A district court's task to identify class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotation marks omitted).

Here, the class is adequately defined and clearly ascertainable: the class members are limited to subscribers of cellular telephone numbers to which a specific pre-recorded message[3] was made during a specific time frame. Nearly all this information—the telephone number, whether the phone was a cell phone, whether the call was answered or a recorded message left, and the date of the message—is readily determinable through the call logs provided to the Court. Doc. 127-3. Moreover, Lincare representatives have testified that it maintains records of the names of individuals called, their date of birth, their email address, telephone number, and home address so the identities of the individuals associated with the listed phone numbers are identifiable. Doc. 127-1 at 69-71; Doc. 127-2 at 23-24. Indeed, other courts have

---

[3] According to Lincare's corporate representative, Brandee Childers, for the past six years, the prerecorded voice message utilized by Lincare to call consumers has always generically stated: "This is your supply center, calling you with an important message regarding your supplies. Please give us a call back at 1-888-544-2715." Doc. 127 at 5 (citing Doc. 127-1 at 19-21, 35).

11

accepted less straightforward methods of identifying class members. *E.g.*, *Keim v. ADF MidAtlantic, LLC*, No. 12-80577-cv, 2018 WL 6333658, at *4 (S.D. Fla. Dec. 3, 2018) (subpoenaing phone carriers for records to identify subscribers of cellular telephone numbers); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-cv, 2018 WL 3145807, at *13–14 (S.D. Fla. June 26, 2018) (using cellular phone numbers to investigate additional contact information for the subscribers through use of an expert).

Defendant contends that individuals with Florida area codes may not necessarily live in Florida, and thus the FTSA class is overly inclusive. This argument is unavailing given the testimony that Lincare's records include the telephone numbers and home addresses of the potential class members.

### c. Requirements under Rule 23(a)

The Court next examines the requirements for class certification under Rule 23(a), which are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Those four requirements are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *See, e.g.*, *Valley Drug Co.*, 350 F.3d at 1188; *Hines v. Widnall*, 334 F.3d 1253, 1255–56 (11th Cir. 2003).

## Numerosity

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff seeking class certification does not need to know the exact size of the proposed class. *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). While the size of the proposed class is relevant to a court's determination, other factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" should also be considered. *Id.* Generally, more than forty putative class members is adequate. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986).

Lincare does not contest numerosity. The Defendant's call records show there are approximately 1884 TCPA class members and 1703 FTSA class members. Plaintiff has satisfied Rule 23(a)'s numerosity requirement.

## Commonality

The commonality requirement typically "refers to the group of characteristics of the class." *Prado-Steiman*, 221 F.3d at 1279. To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). However, it is not necessary that all members of the class have identical claims. *Prado-Steiman*, 221 F.3d at 1279, n. 14. Commonality, like typicality, focuses "on whether a sufficient nexus

exists between the legal claims of the named class representatives and those of individual class members." *Id.* at 1278.

Lincare contends that Plaintiff cannot satisfy the commonality requirement because individualized questions of consent predominate over common issues. In that regard, Lincare argues that consent was provided in many different forms (by telephone and written) and throughout the course of communications, such that the individualized inquiry would be overwhelming. But commonality's requirement that there be "questions of law or fact common to the class" *see* Fed. R. Civ. P. 23(a)(2), is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common, . . . or that the common questions of law or fact predominate over individualized issues." *Vega*, 564 F.3d at 1268 (internal citations and quotations marks omitted). Plaintiff has identified multiple common legal and factual issues: (1) whether Defendant placed prerecorded voice calls to Plaintiff and the class; (2) whether the purpose of the calls was to sell goods or services to Plaintiff and the class; (3) the total number of calls placed by Defendant in violation of TCPA and FTSA; (4) whether Defendant's conduct was knowing and willful (for treble damages); (5) the total amount of damages; and (6) whether Defendant violated the TCPA and FTSA. Further, with regard to the consent form, Plaintiff submits that given the existence of only a mere handful of exemplar consent forms that have been produced in discovery, there would be no need for an individualized inquiry for every plaintiff. Because common questions of law and fact are raised by this dispute, the commonality factor is satisfied.

### Typicality

"The typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan*, 222 F.R.D. at 698 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Even if the fact patterns are unique to each claim, if the class representative and class members experienced the same unlawful conduct, the typicality requirement will be satisfied. *Id.* at 698.

Lincare argues that Plaintiff fails to show she is "typical" of the class because her alleged injury is much different than the putative class members. According to Lincare, nearly 95% of the individuals who received the pre-recorded calls ordered supplies from Lincare, in contrast to Plaintiff who received the calls years after her last order from American HomePatient.

Plaintiff contends the typicality requirement is satisfied because her underlying theory is the same (Defendant violated TCPA and FTSA) as that of the class claims and arises from the same or similar conduct. Plaintiff and the class were subjected to the same prerecorded voice call requesting a call back after their numbers were acquired by Defendant from American HomePatient. Plaintiff and the class seek the same statutory relief. "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado–Steiman*, 221 F.3d at 1278–79). Here, the legal theory

15

underlying Plaintiff's and the class's claims are very similar, if not identical: they arise from the same conduct, the legal bases are the same, and the facts are similar. Plaintiff has satisfied Rule 23(a)'s typicality requirements.

### Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the action. *See Busby*, 513 F.3d at 1323 (citing *Valley Drug Co.*, 350 F.3d at 1189). This requirement serves to uncover any conflict of interest that named parties may have with the class they represent. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 627 (1997). Under this section, the Court must also consider the competency and any conflicts that the class counsel may have.[4] *See id.* at 626, n. 20. Lincare does not dispute competency of class counsel. Other than arguing the individualized consent issue, Lincare does not argue that a conflict exists between Plaintiff and the putative class. The Court finds that Morris and her counsel will adequately represent both putative classes.

---

[4] In assessing the adequacy of class counsel, courts "must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). Additionally, courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* In support of adequacy, Plaintiff attaches the resume of counsel's firm. Doc. 127-6.

### d. Requirements under Rule 23(b)

The party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiff argues certification is appropriate under Federal Rule of Civil Procedure 23(b)(3), which requires that common questions predominate over questions that affect only individual members and the class action must be a superior method for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In sum, Rule 23(b)(3) requires a showing of predominance and increased efficiency (superiority).

### Predominance

The issues raised in the class action that are subject to generalized proof and that are applicable to the class as a whole "must predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id*. at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir. 1996)). The Court should not certify a class if it appears that most of the plaintiff's claims have highly case-specific factual issues. *See id*. Plaintiff has demonstrated that the common issue of whether Defendant placed unwanted prerecorded calls to sell CPAP supplies to the

class can be established through common evidence of Defendant's call logs. Additionally, Plaintiff has shown that the issue of damages, as statutory, do not require an individualized inquiry and may be determined from common evidence.

Again, Lincare argues that the individualized issues of consent predominate over the class claims. Plaintiff argues that consent is a merits issue that the Court will be able to decide on a class-wide basis. Plaintiff submits the issue of consent can be resolved by common evidence as demonstrated by Defendant's argument that providing a telephone number equates to consent. While Plaintiff refutes this position, it nevertheless supports the fact that the issue of consent can be resolved on a class-wide basis. As Defendant has failed to demonstrate that the issue of consent will need to be an individualized inquiry, Plaintiff has met this requirement.

### Superiority of Class Action

Rule 23 requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court looks to the four non-exclusive factors listed in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id*.

TCPA classes are routinely certified as class actions because the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims" support a finding that a class action is superior to litigating individual claims. *Physicians Healthsource, Inc. v. Dr. Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (quoting *C–Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014)).

It is unlikely that the individual class members would have any interest in instituting a lawsuit or in controlling their own individual actions given the modest statutory recovery available. *See, e.g., Mims v. Arrow Fin. Servs., LLC*, –565 U.S. 368, 386 (2012) (noting that plaintiffs are unlikely to pay a $350 filing fee to bring an individual TCPA claim for $500).

The alternative—having numerous individual claims for damages arising out of the same conduct—would be neither efficient nor fair to Defendant or the class members given the circumstances of the case. Moreover, neither party offers evidence that any class member has separately begun any litigation. Finally, difficulties in managing a class action such as this one would likely be minimal. Plaintiff has established the requirements of Rule 23(b)(3).

Because the proposed classes meet the requirements of Rule 23(a) and Rule 23(b)(3), the classes are due to be certified. Accordingly, it is

**ORDERED**:

1. Plaintiff's Motion for Class Certification (Doc. 127) is **GRANTED**.

2. The Court certifies the following classes:

    TCPA Class: All persons within the United States whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who, within the four years prior to the filing of this lawsuit, received one or more prerecorded voice calls, on their cellular telephone, requesting a return call to Defendant.

    FTSA Class: All persons with a Florida area code whose cellular telephone number was provided to Defendant by American HomePatient, Inc., and who, since July 1, 2021 through the filing of this lawsuit, received one or more prerecorded calls, on their cellular telephone, requesting a return call to Defendant.

3. The Court approves Janet Morris as Class Representative and her counsel, Manuel S. Hiraldo and the law firm of Hiraldo, P.A., as Class Counsel.

4. The parties are provided thirty (30) days from the date of this Order to confer on a class notice plan and issues that may arise associated with the administration of the class, including the form and content of the notice, and the establishment of an opt-out period and procedure, and shall advise the Court of these efforts and whether there are issues that require the Court's resolution.

**DONE AND ORDERED** in Tampa, Florida on February 25, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any